UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AESTHETIC EYE ASSOCIATES, P.S.,<br><br>                Plaintiff,<br>    v.<br><br>ALDERWOOD SURGICAL CENTER, LLC; NORTHWEST NASAL SINUS CENTER P.S.,<br><br>                Defendants.<br><br>ALDERWOOD SURGICAL CENTER, LLC; NORTHWEST NASAL SINUS CENTER P.S.,<br><br>                Counter-Plaintiffs,<br>    v.<br><br>AESTHETIC EYE ASSOCIATES, P.S.,<br><br>                Counter-Defendant. | CASE NO. 2:22-cv-00773-TL<br><br>ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION |

This matter comes before the Court on a motion for preliminary injunction filed by Plaintiff Aesthetic Eye Associates, P.S. (Plaintiff AEA) (Dkt. No. 12) to enjoin alleged trademark infringement. Having considered the governing law, relevant record, and the parties' representations at oral argument, the Court DENIES the motion.

I.     BACKGROUND

Plaintiff AEA[1] seeks to enjoin Defendant Alderwood Surgical Center, LLC (Alderwood)[2] and Defendant Northwest Nasal Sinus Center P.S. (Northwest Face)[3] from continuing to use the trademark ALLURE "in connection with the offering of cosmetic and plastic surgery services *at Defendants' Kirkland clinic only*." Dkt. No. 28 at 2 (emphasis in original). Plaintiff specifically seeks a preliminary injunction preventing Defendants and those acting in concert with them from engaging in the following:

> (a) Using or displaying any name or mark including the word ALLURE, or any other name, mark, or phrase confusingly similar thereto as a service mark, trademark, trade name, or part thereof alone or in combination with other words, symbols, styles, titles, or marks in connection with advertising, marketing, sale, or provision of cosmetic surgical and non-surgical services and products in relation to any offices in Kirkland, Washington.
>
> (b) Using or displaying any words, names, trade dress, or marks that create a likelihood of injury to the business reputation of Plaintiff, or likelihood of misappropriation of the ALLURE mark, trade dress, and the goodwill associated with the ALLURE marks and products, in connection with the provision of cosmetic surgical and non-surgical products and services in relation to any offices in Kirkland, Washington.
>
> (c) Using any form of advertising or marketing, including emails, social media posts, video posts, vlogs, and the like, in connection with the provision of cosmetic surgical and non-surgical services and products to any customers, patients, and the general public, using the ALLURE mark where such services are to be performed at Northwest Face located at 3100 Carillon Point in Kirkland.

Dkt. No. 12 at 3.

---

[1] Plaintiff AEA does business as Allure Laser Center & Medispa as well as Allure Laser Center and Medispa and maintains a website at https://alurecosmeticsurgery.com/. Dkt. No. 19 ¶ 23.

[2] Defendant Alderwood does business as Alderwood Surgery Center and maintains a website at https://www.cosmeticsurgeryforyou.com/. Dkt. No. 1 at ¶¶ 10, 22; Dkt. No. 11 at ¶¶ 10, 22.

[3] Defendant Northwest Face does business as Northwest Face & Body and NW Face & Body and maintains a website at https://nwface.com/. Dkt. No. 1 at ¶¶ 11, 23; Dkt. No. 11 at ¶¶ 11, 23.

Plaintiff AEA claims to "indisputabl[y]" own the ALLURE trademark "because it was the first to use ALLURE for cosmetic surgery services." *Id*. at 4. Plaintiff has not registered this trademark with the U.S. Patent and Trademark Office (PTO) (*see* Dkt. Nos. 1, 12), but it registered the trade name "Allure Facial Laser Center and Medispa" with the Washington Department of Licensing in October 2002. Dkt. No. 13 at 2; Dkt. No. 13-1 (registration). Plaintiff claims to have used the ALLURE trademark in commerce since November 2002 and to have thus "gained common law rights and developed extensive goodwill in ALLURE, such that consumers have come to associate it with Plaintiff as the source of superior cosmetic surgery products and services." Dkt. No. 12 at 4. Plaintiff AEA operates four clinics in the state, including one in Kirkland. Dkt. No. 1 at 4.

Defendants' owner Dr. Javad Sajan alleges he has used "ALLURE ESTHETIC" and "ALLURE ESTHETIC PLASTIC SURGERY" in connection with his medical practice since 2014.[4] Dkt. No. 26 at 2. Defendant Alderwood owns the following federal trademarks:[5] (1) "Allure Esthetic" using standard characters, Reg. No. 5,695,124 (Mark 124) in International Class 44 for "Cosmetic surgery services"; and (2) "A ALLURE ESTHETIC" stylized and/or with design,[6] Reg. No. 5,987,267 (Mark 267) in International Class 44 for "Cosmetic surgery services" and "Online cosmetic skincare consultation services." Dkt. No. 1-1 at 51, 54; Dkt. No. 12 at 5; Dkt. No. 18 at 2; Dkt. No. 18-1 at 29, 32. Dr. Sajan states he was "not aware of any competitors using the same or a similar mark" or of Plaintiff AEA when he applied to register

---

[4] Dr. Sajan claims to have first used "ALLURE ESTHETIC" in connection with a previous (now-defunct) medical practice and to have used this mark with respect to his Alderwood practice as early as 2016. Dkt. No. 26 at 2.

[5] Plaintiff AEA filed a petition for cancellation of Defendants' marks with the Trademark Trial and Appeal Board in 2021. Dkt No. 12 at 9; Dkt. No. 1 at 8.

[6] The "A" before "ALLURE ESTHETIC" in Mark 267 appears in stylized form. *See* Dkt. No. 1-1 at 54.

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION - 3

these marks in 2018. Dkt. No. 26 at 3. He acquired a clinic in Kirkland (Northwest Face) in 2020. *Id*.

Plaintiff AEA first learned that Defendants were using "Allure Esthetic" and "Allure Esthetic and Design" to market similar procedures within two miles of Plaintiff's Kirkland location around December 2020. Dkt. No. 12 at 6. Soon after, Plaintiff sent Defendants a letter requesting they cease use of "the ALLURE name and trademark." Dkt. No. 13 at 5; Dkt. No. 13-1 at 99–100.

The parties dispute whether Defendants have used ALLURE or similar marks to advertise their Kirkland clinic (Northwest Face & Body at 3100 Carillon Point). Plaintiff has produced marketing emails sent from "ALLURE ESTHETIC PLASTIC SURGERY" advertising services provided in Kirkland. Dkt. No. 13 at 3–4; Dkt. No. 13-1 at 45–90; Dkt. No. 17 at 2. The most recent of these emails is dated March 29, 2022, three days after counsel for Defendants had written to Plaintiff that "[the Kirkland clinic] does not use the ALLURE mark in connection with its offerings" and "Dr. Sajan does not currently have any plans to rebrand [the Kirkland clinic] under the ALLURE mark." Dkt. No. 13 at 3–4; Dkt. No. 13-1 at 105–06. In that letter, Defendants offered to review their email and marketing practices to reduce future risk of consumer misdirection. Dkt. No. 13-1 at 106. Dr. Sajan continues to disclaim any plans to brand the Kirkland clinic with the ALLURE ESTHETIC marks. Dkt. No. 26 at 3. However, he does use ALLURE ESTHETIC to market his Alderwood practice even to customers living in Kirkland and contends that "Alderwood has consistently used search engine optimization to target specific customers, including those living in Kirkland." *Id*. at 2–3. Defendant Alderwood's online marketing strategies include a website, email, and social media. *Id*. at 3–4; Dkt. No. 20 at 23; Dkt. No. 25 at 2. Dr. Sajan avers that the search engine optimization and website changes an

injunction would require would cause estimated losses of approximately $500,000 over two years. Dkt. No. 26 at 4.

The parties also dispute whether the relevant mark is the term ALLURE on its own or ALLURE in combination with other words. Defendants argue that "the Court must focus on the term ALLURE LASER CENTER & MEDISPA." Dkt. No. 20 at 10–11 (citing *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1051 (C.D. Cal. 2013)), 17–19. Plaintiff does not take a clear position on this issue, stating in reply that "Plaintiff has used the mark ALLURE and ALLURE LASER CENTER & MEDISPA continuously for over five years" (Dkt. No. 28 at 5) and that "in evaluating ALLURE LASER CENTER & MEDISPA, the ALLURE element is the dominant portion of the mark and the remaining words 'laser' and 'medispa' are likely to be disclaimed" by the PTO. Dkt. No. 28 at 8.

Plaintiff has brought claims under the Lanham Act and the Washington Consumer Protection Act, as well as common law trademark and unjust enrichment claims. Dkt. No. 1 at 9–14. The motion for preliminary injunction seeks relief based solely on the Lanham Act claim. *See* Dkt. No. 12 at 2–3; Dkt. No. 28 at 4.

## II. LEGAL STANDARDS

### A. Issuance of a Preliminary Injunction

Preliminary injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazureck v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). Generally, a plaintiff seeking a preliminary injunction must establish a likelihood of success on the merits, that the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in the plaintiff's favor, and that an injunction would be in the public interest. *Id*. at 20.

Even so, the Ninth Circuit has recognized that where the balance of hardships tips *sharply* in a plaintiff's favor, a preliminary injunction may issue so long as the plaintiff demonstrates that "serious questions going to the merits were raised" and that the other *Winter* factors (a likelihood of irreparable harm and that the injunction would serve the public interest) are satisfied. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (determining that this "serious questions test" may be applied post-*Winter* "in cases where clear irreparable injury would otherwise result"). In other words, "[a] preliminary injunction may be granted in a trademark case where the moving party demonstrates either (1) a combination of probable success on the merits *and* the possibility of irreparable injury *or* (2) the existence of serious questions going to the merits *and* that the balance of hardships tips sharply in its favor." *Grocery Outlet, Inc. v. Albertson's Inc.*, 497 F.3d 949, 951 (9th Cir. 2007) (quoting *Sardi's Rest. Corp. v. Sardie*, 755 F.2d 719, 723 (9th Cir. 1985) (internal citations and quotation omitted) (emphases in original)). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id*. (citing *A & M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001)). " 'Serious questions' refers to questions which cannot be resolved one way or the other at the hearing on the injunction and as to which the court perceives a need to preserve the status quo lest one side prevent resolution of the questions or execution of any judgment by altering the status quo." *Equal Emp. Opportunity Comm'n & Sanchez*, (quoting *Republic of the Phil. v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988), *cert. denied*, 490 U.S. 1035 (1989)); *see also Bernhardt v. L.A. Cnty.*, 339 F.3d 920, 926 (9th Cir. 2003) (finding a claim presented serious questions and citing *Rep. of the Phil.*, 862 F.2d at 1362).

**B.     Trademark Rights**

To establish a claim for trademark infringement under the Lanham Act, a plaintiff must prove (1) an enforceable interest in the mark at issue, and (2) that the defendant's use of the mark is likely to cause consumer confusion. *Network Automation, Inc. v. Adv. Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (citation omitted). The Ninth Circuit applies the eight-factor *Sleekcraft* test in assessing whether consumer confusion is likely. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d, 1199 1205 (9th Cir. 2000), *overruled on other grounds by Winter*, 555 U.S. at 27.

### III.     DISCUSSION

**A.     The First *Grocery Outlet* Formulation**

The first possible formulation a moving party must demonstrate is a combination of probable success on the merits and the possibility of irreparable injury. *See Grocery Outlet, Inc.*, 497 F.3d at 951. Therefore, the Court first analyzes whether Plaintiff is likely to succeed on the merits of its Lanham Act claim.

1.     <u>Merits of the Lanham Act Claim</u>

Registration of a trademark "does not create a mark or confer ownership; only use in the marketplace can establish a mark." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 979 (9th Cir. 2006) (citations omitted); *see also Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 292 (3d. Cir. 1991), *cert. denied*, 502 U.S. 939 ("With respect to ownership of unregistered marks, the first party to adopt a trademark can assert ownership rights, provided it continuously uses it in commerce."). A qualifying trademark that is not federally registered may still be enforced under Section 43(a) of the Lanham Act, "which creates a federal cause of action for trademark infringement." *Matal v. Tam*, 137 S. Ct. 1744, 1752 (2017). A non-registrant can rebut the presumption that a registrant owns a mark by demonstrating first-use of the mark in

commerce by a preponderance of the evidence. *Sengoku Works Ltd. v. RMS Int'l, Ltd.*, 96 F.3d 1217, 1219–20 (9th Cir. 1996), *cert. denied*, 521 U.S. 1103 (1997). The first (senior) user may "enjoin 'junior' users from using confusingly similar marks in the same industry or market or within the senior user's natural zone of expansion." *Brookfield Comms., Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999) (collecting cases).

A common law trademark owner making an infringement claim must "establish not only that he or she used the mark before the mark was registered, but also that such use has continued to the present." *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 599 (9th Cir. 2014) (quoting *Watec Co., Ltd. v. Liu*, 403 F.3d 645, 654 (9th Cir. 2005)). "Continuous usage requires sufficiently public usage as 'to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark.' " *Id.* (quoting *Brookfield*, 174 F.3d at 1052).

Plaintiff alleges that it has a valid, protectable interest in the mark as the senior user of ALLURE in connection with cosmetic surgery goods and services. Dkt. No. 12 at 11. Meanwhile, Defendants contend, *inter alia*, that Plaintiff abandoned its common law rights to the mark through over a decade of nonuse between 2008 and 2021. Dkt. No. 20 at 12. In the pleadings and motion papers, Plaintiff provides no evidence of commercial use of any ALLURE-related mark between at least 2011[7] and 2021. *See* Dkt. Nos. 1, 12–18, 19, 28. Plaintiff asserts that a declaration from AEA's Executive Director Janet Jordan states that "Plaintiff has used the Allure mark continuously since 2002, and Defendant [*sic*] submitted no evidence, to the contrary." Dkt. No. 28 at 3. However, this misrepresents the content of Ms.

---

[7] Though Plaintiff describes one of the exhibits it supplied in support of its motion for preliminary injunction as an advertisement from 2006, Dkt. No. 13 at 3, the document itself has printed in small font at the top: "ALLURE_PAC AD_6:AD 3/16/11 11:14 AM Page 1," which may be evidence of commercial use in 2011. Dkt. No. 13-1 at 13.

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION - 8

Jordan's declaration which does not assert continuous use but, rather, only states that Plaintiff AEA has advertised its goods and services using ALLURE "[s]ince as early as November 2002." Dkt. No. 13 at 2.

Plaintiff's only other argument in reply regarding continuous use appears to be that Defendants have waived an abandonment defense. Dkt. No. 28 at 3 ("Plaintiff [*sic*] has not plead abandonment as an affirmative defense and this argument should be stricken."). Plaintiff is mistaken. As the unregistered user, Plaintiff has the burden of establishing continuous use regardless of whether Defendants have made out a *prima facie* case of abandonment. *See Airs Aromatics*, 744 F.3d at 599–600 ("the *owner* must establish . . . that such use has continued to the present") (emphasis added). There is no evidence in the record of Plaintiff AEA's commercial use of ALLURE after 2011 and before 2021. *See* Dkt. No. 13 at 2–3; Dkt. No. 13-1 at 6–44 (only providing proof that AEA had used ALLURE in advertising in 2003, 2004, 2006, 2008, possibly 2011, and 2021). Even after Defendants alleged abandonment in their response brief (Dkt. No. 20 at 12), Plaintiff failed to provide any evidence of commercial use from 2012 to 2020. *See* Dkt. No. 28. Plaintiff made a proffer of purported evidence of AEA's use of ALLURE in commerce during this time period during oral argument, but the Court declined to accept new evidence on the motion without any notice to Defendants and nearly two months after Plaintiff had filed the motion. *Cf. Matson v. United Parcel Serv., Inc.*, 872 F. Supp. 2d 1131, 1141 (W.D. Wash. May 25, 2012) (refusing to add to the case record "new evidence [offered during oral argument] that could have been brought to the court's attention earlier with the exercise of reasonable diligence").

Because Plaintiff has not established priority of use at this stage of the case, the Court finds that Plaintiff AEA fails to carry its burden of showing a likelihood of success on its trademark infringement claim.

2.  <u>Irreparable Harm</u>

"[I]rreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 978 (9th Cir. 2017) (citation omitted), *cert. denied*, 138 S. Ct. 1279 (2018). The harms Plaintiff complains of are harms (1) to its reputation and goodwill and (2) related to having to retain and protect inadvertently disclosed patient health information from Defendants' customers. Dkt. No. 12 at 19–21. Plaintiff has not demonstrated that either of these alleged harms are irreparable.

a.  *Harm to Goodwill and Reputation*

An "economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award." *ACT 898 Prods., Inc. v. WS Indus., Inc.*, 774 F. App'x 1012, 1016 (9th Cir. 2019) (quoting *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)). Intangible injuries such as "loss of control over business reputation and damage to goodwill can constitute irreparable harm" warranting injunctive relief. *Adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 757 (9th Cir. 2018) (citation omitted). Still, a claim for irreparable harm must be supported with evidence in the record. *See id*. at 759–61 (finding that footwear brand had brought forward "specific evidence" of likely irreparable harm to its reputation and goodwill with respect to trademark infringement of one shoe but had failed to bring "comparable argument or evidence" regarding another shoe).

Plaintiff AEA makes no argument at all to support a finding of irreparable harm regarding alleged reputational harms or damage to goodwill. *See* Dkt. No. 12 at 21; Dkt. No. 28 at 13. Instead, Plaintiff claims that it is "statutorily entitled to a rebuttable presumption of harm on its trademark infringement claim." Dkt. No. 12 at 21; Dkt. No. 28 at 9–12. However, the case cited by Plaintiff in support of this argument found that "[b]y statute, [the movant] is entitled to a

rebuttable presumption of irreparable harm on its trademark claim because [movant] has shown it will likely succeed on the merits." *See AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682, 694 (9th Cir. 2022) (interpreting 15 U.S.C. § 1116(a)); *see also* Dkt. No. 12 at 21. Here, having failed to establish a likelihood of success, Plaintiff AEA cannot rely on this presumption.

Looking to the evidence presented by Plaintiff in support of the motion for preliminary injunction, Plaintiff AEA claims it has suffered reputational harm because of two negative online reviews of Plaintiff's business posted by non-customers. *See* Dkt. No. 13 at 4; Dkt. No. 13-1 at 91–94. These reviews provide limited support for the motion because Plaintiff has not established that the reviews were mistakenly left by Defendants' customers. *See* Dkt. No. 13 at 4 (explaining that there are no records of the reviewers being Plaintiff's patients but not alleging that these were Defendants' patients). Plaintiff logged fifty-five instances of purported customer or provider confusion between December 2020 and May 2022 (Dkt. No. 13-1 at 112–115 (confusion log)) and highlights a seven-week period in Spring 2022 where it dealt with fourteen instances of confusion. Dkt. No. 12 at 6–8. While an inconvenience, Plaintiff does not explain how redirecting two confused customers or providers per week during this period (or less than one person per week during the roughly seventy-three weeks covered by the log) constitutes irreparable non-economic harm; the minimal extra staff time spent on fielding extra calls, e-mails, or walk-ins would be compensable by a damages award. *See also infra* Section III.A.2.b.[8] Plaintiff has not adequately demonstrated harm to its goodwill and reputation to warrant injunctive relief.

---

[8] The Court makes no determination on the relevance of the confusion log beyond assessing the harm Plaintiff faces in the absence of an injunction.

        b.        *Harm to Non-Patients*

Plaintiff contends that Defendants' patients, mistakenly believing they are contacting Defendants, have disclosed their protected health information (PHI) to Plaintiff, "including the procedure or service scheduled or performed, along with their demographic information such as name, date of birth, phone number and/or email." Dkt. No. 12 at 6. The consumer confusion log Plaintiff provided is replete with instances of individuals expressing confusion between the two entities. *See* Dkt. No. 13-1 at 112–115. However, many entries lack sufficient specificity to determine whether the person contacting Plaintiff was Plaintiff's patient, Defendants' patient, or someone who was not a patient of any of the parties. *See id*. entries 001-004, 008, 014–015, 017–021, 024, 27–28, 30, 34, 41–42, and 46 (some of which are labeled "AEA Patient").

One entry indicates that Plaintiff AEA's employees may unnecessarily solicit the PHI of people who contact them seeking services from Defendants. *See id*., entry 37 ("Patient came in for an appointment for a peel with 'Allegra'.[9] When told that she had the wrong office she said I must have got the wrong place and left. Would not leave her name."). Another entry indicates that on at least one occasion, Plaintiff's patients had mistakenly contacted Defendants. *See id.*, entry 009 ("Our Patient contacted Allure Esthetics to find out when her appt was. They told her wrong number"); *but see* Dkt. No. 28 at 2 (Plaintiff's reply brief alleging that Defendants brand recognition is so low that Plaintiff's patients have never mistakenly contacted Defendants seeking Plaintiff's services). Plaintiff has neither adequately contextualized nor accurately reported the contents of their confusion log.

The parties dispute whether Plaintiff AEA must maintain and protect Defendants' patients PHI under the Health Insurance Portability and Accountability Act (HIPAA); neither

---

[9] Defendants employ a physician with the surname Allegra, but Dr. Allegra has stated "I do not personally perform chemical or other cosmetic 'peels' as part of my practice." *See* Dkt. No. 21 at 3.

side cites authority from the Ninth Circuit. Dkt. No. 12 at 8, 20; Dkt. No. 20 at 29; Dkt. No. 28 at 10–11. Plaintiff insists that the parties are covered entities under HIPAA and thus have obligations regarding PHI "inadvertently received, such as misdirected physician referrals for individuals who are not [their own] patients." Dkt. No. 28 at 10–11. In the briefing, Plaintiff cites no caselaw for this proposition, instead pointing to regulatory definitions that do not make clear that Plaintiff is a covered entity with respect to non-patient PHI. *See* Dkt. No. 12 at 20 (citing 45 C.F.R. § 164.502); Dkt. No. 28 at 10–11 (citing 45 C.F.R. § 160.103). Plaintiff cites an Eastern District of Pennsylvania case for the proposition that "prevention of confusion and mistakes in medicine is too vital to be trifled with." Dkt. No. 28 at 12 (citing *Rann Pharmacy, Inc. v. Shree Navdurga LLC d/b/a Rams Pharmacy*, Case No. 2:16-cv-04908, 2016 WL 6876350, at *8 (E.D. Pa. Nov. 22, 2016) (quoting *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 716 (3d. Cir. 2004)). But Plaintiff has provided no evidence that confused patients have been at risk of being given the incorrect medical treatment because they were confused about which clinic to visit.

Defendants, meanwhile, cite to inapt cases from district courts in the Third Circuit and a Health and Human Services FAQ document. *See* Dkt. No. 20 at 29. In the first of these cases, *In re Asbestos Products Liability Litigation (No. VI)*, 256 F.R.D. 151 (E.D. Pa. 2009), a district court held that physicians who were consulted for litigation purposes rather than as "health care providers" to provide "physician services" were not covered entities under HIPAA for subpoena enforcement purposes. *Id*. at 155. The second case, *Miller v. Allstate Fire and Casualty Insurance*, Case No. 3:07-cv-00260, 2009 WL 700142 (W.D. Pa. Mar. 17, 2009), involved an entity that hires physicians merely to review medical records that was determined not to be a covered entity under HIPAA for any purposes. *Id.* at *3. As for the FAQ, it "identif[ies] 28 scenarios in which a covered entity may disclose information to or about their patient to friends

1  and family members." Dkt. No. 20 at 29. These scenarios are irrelevant to determining whether a

2  covered entity may fail to protect or otherwise disclose PHI about a non-patient.

3        Further, Plaintiff has provided no authority supporting the argument that irreparable harm

4  to a third party (as opposed to the movant) can satisfy this element of the preliminary injunction

5  test. *See Immigr. Legal Res. Ctr. v. City of McFarland*, 827 F. App'x 749, 751–52 (9th Cir.

6  2020) (citation omitted) (vacating and remanding district court's grant of a preliminary

7  injunction based on "the prospect of harm to third parties" rather than "irreparable harm to the

8  plaintiffs themselves").

9        The Court is not able to find that Plaintiff AEA has established irreparable harm to the

10  parties' patients. Therefore, the Court finds that Plaintiff cannot obtain a preliminary injunction

11  under the first *Grocery Outlet* formulation.

12  **B.   The Second *Grocery Outlet* Formulation**

13        The second formulation under which a moving party can obtain a preliminary injunction

14  is by demonstrating "the existence of serious questions going to the merits *and* that the balance

15  of hardships tips sharply in its favor." *See Grocery Outlet, Inc.*, 497 F.3d at 951 (emphasis in

16  original) (citation omitted). Just as the harms Plaintiff alleges do not support a finding of

17  irreparable harm, they do not sharply tip the balance of hardships in favor of Plaintiff.

18        In fact, based upon the record before the Court at this time, the balance of hardships tips

19  slightly in Defendants' favor, who have alleged that their current marketing strategies and web

20  search-optimization standings would be disrupted by an injunction. *See* Dkt. No. 20 at 28; Dkt.

21  No. 26 at 4. Defendants estimate that an injunction would result in a $500,000 loss over two

22  years if Defendant Alderwood can no longer market to customers in Kirkland using "ALLURE

23  ESTHETIC." Dkt. No. 26 at 2, 4. Though Defendants do not provide evidence corroborating this

24  statement from Dr. Sajan, the harm they allege if an injunction issues is more significant than the

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION - 14

harm Plaintiff alleges in the absence of an injunction. Dr. Sajan does explain that their estimated losses are based on "years-long marketing investment time, cost, and effort, and the direct loss of clinical business." *Id.* at 4. Economic harm is a factor to be weighed when assessing the relative equities. *See Earth Island Inst. v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010) (citation omitted). The balance of hardships does not tip sharply in Plaintiff's favor. The Court thus does not need to reach the issue of whether serious questions exist.

Plaintiff has failed to meet the requirements for a preliminary injunction under either *Grocery Outlet* formulation. Therefore, preliminary injunctive relief is not warranted.

### IV.   CONCLUSION

For the above reasons, the Court DENIES Plaintiff AEA's motion for preliminary injunction.

Dated this 4th day of October 2022.

Tana Lin
United States District Judge